UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**JOSEPH A. SUERO,**

      **Plaintiff,**

v.                                            Case No. 2:12-CV-0626-FtM-29DNF

**CAROLYN W. COLVIN,**
**Acting Commissioner of the United**
**States Social Security Administration,**

      **Defendant.**
_____/

### REPORT AND RECOMMENDATION

The Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Upon a review of the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the ALJ's decision, the administrative record, and the pleadings and memoranda submitted by the parties in this case, and for the reasons set forth herein, I recommend that the Commissioner's decision in this case be **AFFIRMED**.

### I.  Background

The Plaintiff filed for DIB and SSI on May 7, 2009, alleging an onset of disability on January 1, 2007. R. 82-93. The Plaintiff's application was denied initially and upon reconsideration. R. 38-41. The Plaintiff requested and received a hearing, which was held on July 14, 2011 before ALJ Larry Butler (the "Hearing"). R. 25-36. In a decision dated August 22, 2011 (the "Decision"), the ALJ found the Plaintiff not disabled as defined under the Act. R.

45-53. The Plaintiff timely exhausted his administrative remedies, and this case is properly before the Court for review under 42 U.S.C. § 405(g).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-point sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

In his Decision, the ALJ performed the required five-step sequential analysis. R. 45-53. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date. R. 47. At step two, the ALJ determined that the Plaintiff suffered from the severe impairment of lumbar degenerative changes. R. 47-50. At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 50. Next, the ALJ found that the Plaintiff retained the residual functional capacity ("RFC") to perform the full range of medium work. R. 50-52. At step four, the ALJ determined that the Plaintiff was capable of performing past relevant work as an engineering trouble-shooter. R. 52-53. In the alternative, the ALJ consulted the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2, (the "Grids") and determined that, based on the Plaintiff's age,

education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. R. 52-53. Based on his finding at step four, the ALJ concluded that the Plaintiff was not disabled under the Act. R. 53.

### III. Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they shall be conclusive. 42 U.S.C. § 405(g). Further, when the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1533, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (noting that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

The Plaintiff challenges the ALJ's Decision on four grounds:

1)   The ALJ erred by failing to find the Plaintiff's psychological impairments severe;

2)   The ALJ erred by rejecting the opinions of the Plaintiff's treating physician and psychiatrist;

3)   The ALJ erred by failing to elicit the testimony of a vocational expert ("VE"); and

4)   The Appeals Council erred by failing to remand the case for consideration of new and material evidence.

For the reasons discussed below, the Court finds that the ALJ's Decision was based on substantial evidence and comported with applicable legal standards.

### A.   The ALJ's Evaluation of the Plaintiff's Alleged Psychological Impairments

First, the Plaintiff argues that the ALJ erred by failing to find his psychological impairments severe. At step two, the claimant bears the burden of proving the existence of a severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). In determining the severity of an impairment at step two, evidence about the functionally limiting effects of an individual's impairments must be evaluated in order to assess the effect of the impairments on the individual's ability to perform basic work activities. *See* SSR 96-3p, 1996 WL 374181, at *2 (July 2, 1996). However, at step two, the ALJ is not required to identify all of the impairments that should be considered severe. *See Heatly v. Commissioner of Social Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."). Instead, at step three, the ALJ is required to demonstrate that she has considered all of the claimant's impairments, whether severe or not, in

combination. *Id.* (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (explaining that the ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").

In considering an individual with a mental impairment, the ALJ is required to use the "special technique" dictated by the Psychiatric Review Technique ("PRT") Form for evaluating mental impairments. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R. § 404.1520a). This technique requires the evaluation of how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* (quoting 20 C.F.R. § 404.1520a(c)(3)-(4)). For the first three categories of mental functioning, the ALJ must rate the degree of limitation on a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). For the last category, the ALJ must rate the degree of limitation on a four-point scale: none, one or two, three, or four or more. 20 C.F.R. § 404.1520a(c)(4). Under the regulations, "[i]f we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe...." 20 C.F.R. § 404.1520a(d)(1). The ALJ is required to complete a PRT form and append it to the decision or incorporate the results of this technique into the findings and conclusions of his decision. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005).

At step two, the ALJ did not identify a severe impairment related to the Plaintiff's alleged psychological impairments. R. 47. However, the ALJ was under no duty to identify a psychological impairment at step two so long as he considered the functional impact of all of the Plaintiff's impairments, whether severe or not, throughout the remaining steps of the sequential analysis. *Heatly v. Commissioner of Social Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). In his

Decision, the ALJ performed the special technique to evaluate the Plaintiff's mental symptoms. Ultimately, the ALJ found that the Plaintiff had no limitation in activities of daily living, a mild limitation in social functioning, no limitation in maintaining concentration, persistence, or pace, and no episodes of decompensation of an extended duration. R. 49. As part of this conclusion, the ALJ found the Plaintiff not fully credible and noted that the Plaintiff's mental functioning was "not as limited as alleged." R. 48. Thus, in his RFC assessment, the ALJ did not incorporate any mental limitations. R. 50. After reviewing the record as a whole, including the Plaintiff's subjective statements, the Court finds that the ALJ's evaluation of the Plaintiff's alleged psychological impairments was based on substantial evidence.

The ALJ acknowledged that the Plaintiff had an extended history of reporting mental illness. R. 47. The Plaintiff was evaluated by Michele Candelore, D.O., on three occasions in March and April of 2009. R. 199-204. During these examinations, Dr. Candelore found that the Plaintiff was alert and oriented, and she made no findings that suggested limitations in any of the four domains of mental functioning. R. 199-204. Dr. Candelore filled out a January 11, 2010 multiple impairment questionnaire, in which she diagnosed the Plaintiff with schizophrenia and hypertension. R. 227. Dr. Candelore concluded that the Plaintiff "cannot work due to mental illness," was "totally unstable," and was "incapable of even 'low stress' [jobs]." R. 232-33. The Plaintiff presented to Dr. Candelore on three more occasions in 2010 and 2011. R. 285-93. However, these treatment notes focused mostly on physical complaints, and Dr. Candelore's mental observations were generally normal. R. 285-93.

On September 23, 2009, the Plaintiff presented to J.L. Bernard, Ph.D., for a mental status examination, in which he determined that the Plaintiff's allegations of mental impairments were likely unfounded. R. 207-09. Dr. Bernard stated:

> The referral spoke to "Bipolar" and "Paranoid Schizophrenia". It was obvious to me within ten minutes that he is not schizophrenic. By the end of the session I was questioning his "Bipolar" as well.
>
> His thinking was sound, he related quite readily and well, interpersonal warmth was present throughout the contact, and he was smiling and even laughing appropriately by the second half of the session.
>
> He spoke of auditory hallucinations, but when I asked him what the "voices" were saying he stumbled around, finally saying "I don't know." (Of the hundreds of schizophrenics I've worked with, I've [sic] have never seen one who couldn't answer that question). I noted in the records that he had spoken of hallucinations during a much earlier evaluation, and couldn't explain what the "voices" were saying then either. I believe the real problem may be that he doesn't know what he should say.

R. 207. Dr. Bernard also attributed the Plaintiff's sadness and anger to longstanding unemployment as opposed to his alleged "Bipolar" disorder. R. 207. In addition, Dr. Bernard questioned the Plaintiff about his alleged problems dealing with people:

> I asked, "How long do these periods [of incoherence] last [after you lose your temper]?" expecting him to say perhaps 20-30 minutes. He hesitated, then replied "It can last for three or four days." I asked, "What have others told you about how you acted across this "three or four days?" He seemed stymied and answered, "I don't know." I pressed him on this, and he finally said, "No one has ever seen me." (Again, his response does not fit with his "possible" diagnoses).

R. 207-08. In terms of functionality, Dr. Bernard noted that the Plaintiff' reported going to the labor pool every day at 5:00 A.M., and the Plaintiff "seems to complete tasks of any nature at a reasonable rate." R. 208. Finally, Dr. Bernard found that the Plaintiff's presentation was "quite pleasant," his "thought processes were consistently rational, clear and logical," his "mood was euthymic and appropriate," and his "score of 29/30 on the Folstein MMSE [was] almost perfect." R. 208-09.

On February 28, 2010, the Plaintiff presented to Stanley Rabinowitz, M.D., for a consultative examination. R. 235-38. Dr. Rabinowitz noted that the Plaintiff had a "history of bipolar affective disorder and schizophrenia," but "does not see a psychiatrist…." R. 235. Dr.

Rabinowitz documented a number of the Plaintiff's subjective complaints regarding his psychological symptoms, but made no objective findings that demonstrated decreased mental functionality. R. 236. Instead, Dr. Rabinowitz observed that the Plaintiff's speech was "clear and understandable," communication was normal, orientation was normal, memory was intact, appearance was appropriate, and stated that the "patient exhibited no behavioral difficulties during the interview and examination…." R. 236-37.

On April 7, 2010, state agency consultant Deborah Carter, Ph.D., filled out a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique. R. 250-67. Out of the twenty categories of mental functioning identified on the Mental Residual Functional Capacity Assessment, Dr. Carter found that the Plaintiff had moderate limitations in interacting appropriately with the general public, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting. R. 250-51. For the remaining seventeen categories of mental functioning, Dr. Carter concluded that the Plaintiff was "not significantly limited." R. 250-51. Dr. Carter stated that the Plaintiff was able to "understand, remember, carry out routine instructions/procedures," "concentrate to complete things he starts," go out and "travel independently," and "interact appropriately with others." R. 252. In her Psychiatric Review Technique form, Dr. Carter found that the Plaintiff had moderate limitations in maintaining social functioning. R. 263.

On April 21, 2011, Nelson A. Hernandez, M.D., filled out a Psychiatric/Psychological Impairment Questionnaire, in which he found that the Plaintiff suffered from severe mental impairments across all of the functional domains. R. 269-76. Out of the twenty categories of mental functioning identified, Dr. Hernandez determined that the Plaintiff suffered from marked limitations (the highest rating) in sixteen categories and moderate limitations in the remaining

four categories. R. 273-74. When asked to identify the clinical findings that demonstrate and/or support his findings, Dr. Hernandez checked off "poor memory," "mood disturbance," "delusions or hallucinations," "recurrent panic attacks," "difficulty thinking or concentrating," and "oddities of thought, perception, speech or behavior," among others. R. 270. Overall, Dr. Hernandez concluded that the Plaintiff was incapable of working even low stress jobs. R. 275.

At the Hearing, the ALJ asked the Plaintiff why he became unable to work, to which the Plaintiff responded:

> Well, I seemed to be, I don't know. I used to – I don't like leaving the house. I'm [INAUDIBLE] I'm paranoid. I just have trouble dealing with people, and going out and leaving my house. I'm kind of a recluse. I guess you could say that I just – I'm afraid to go out anymore. I don't know what the big deal is but I just – I feel safer just sitting at home.

R. 27-28. The Plaintiff testified that he does not like to go out in public and does not like to ride the bus because he gets afraid. R. 30. In addition, the Plaintiff stated that he has "lost a lot of jobs" for having disagreements and argument with people because he was "quick-tempered." R. 28. With regard to attention and memory, the Plaintiff testified that he "can't remember," has "been forgetting a lot of things," and suffers from "short-term memory loss." R. 30. With regard to episodes of decompensation, the Plaintiff alleged that he suffered from panic and anxiety attacks. R. 29. The Plaintiff testified that when he gets into fights, he "snap[s]," and then does not remember what happened to trigger the fight. R. 34. In an undated Disability Report, the Plaintiff claimed that he "never really leave[s] the house," and "can stay home for weeks at a time and never go out of the house." R. 107. Further, the Plaintiff stated that he does not like dealing with crowds and "get[s] very emotional." R. 107.

In a June 7, 2009 Function Report, the Plaintiff reported that he goes outside "every day," and uses public transportation to get around. R. 126. The Plaintiff also reported that he goes

shopping twice a week for groceries and is able to independently handle his finances. R. 126. With regard to social functioning, the Plaintiff reported that he does not have any friends and stays at home all the time if he is unemployed. R. 127. However, when asked whether he has "any problems getting along with family, friends, neighbors, or others," the Plaintiff checked the box for "No" and did not provide any further explanation. R. 128. When prompted to check off his physical and mental limitations, the Plaintiff did not report any restrictions in talking, hearing, memory, completing tasks, concentration, understanding, or following instructions. R. 128. Further, he stated that he finishes what he starts, follows written instructions well, follows spoken instructions "good," and handles changes in routine "good." R. 128-29.

In terms of the Plaintiff's alleged mental impairments, the ALJ concluded that the medical evidence does not support the Plaintiff's subjective allegations. R. 48. After reviewing the record as a whole, the Court finds that the ALJ's credibility finding was supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."). While the Plaintiff claims to have a long history of multiple mental impairments, the record reveals only a few occasions of actual treatment during the relevant period for these alleged impairments. Throughout the Plaintiff's treatment, Dr. Candelore made few objective findings and documented few mental limitations. *See* R. 199-204. Further, after examining the Plaintiff, Dr. Bernard expressed significant skepticism as to the veracity of the Plaintiff's subjective complaints. Objective findings upon examination by Dr. Bernard, Dr. Candelore, and Dr. Rabinowitz all revealed relatively normal mental functioning. These findings directly contradict a number of the Plaintiff's subjective complaints and Dr. Hernandez's conclusion that the Plaintiff suffered from extreme mental impairments.

Ultimately, the ALJ properly discounted Dr. Hernandez's opinion since he only saw the Plaintiff on a single occasion, the treatment notes from this alleged encounter were not made a part of the administrative record, and his opinion was "wholly inconsistent with the other medical evidence in the record including [the Plaintiff's] activities of daily living." R. 50. The ALJ also properly discounted Dr. Candelore's January 11, 2010 questionnaire since Dr. Candelore treated the Plaintiff on only "three occasions over a four-week period [prior to her January 11, 2010 questionnaire]," her treatment notes contained "little in the way of objective medical evidence," and Dr. Candelore was "not a mental health specialist…." R. 49-50. Dr. Candelore admitted in her questionnaire that she had not performed any laboratory or diagnostic tests to support her opinions as to the Plaintiff's mental functioning. R. 228. Finally, the Court notes that there are numerous examples of internal inconsistencies between the Plaintiff's statements at different times throughout the record. For instance, in an undated disability report, the Plaintiff reported never leaving the house for weeks at a time, yet stated in a separate function report that he shops for groceries twice a week. *Compare* R. 107 *to* R. 126. In addition, at the Hearing, the Plaintiff reported a number of problems related to memory and concentration, yet stated in an earlier function report that he did not suffer from any functional limitations related to memory or concentration. *Compare* R. 30 *to* R. 128.

The Plaintiff argues that the ALJ consistently failed to acknowledge the high number of diagnoses for various mental impairments throughout the record. (Dkt. No. 12 at 6-13.) However, these diagnoses, alone, say nothing as to the functionally limiting effects of the Plaintiff's alleged mental impairments. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely

medical standards of bodily perfection or normality."); *Sutton v. Astrue*, No. 3:09-cv-215-J-TEM, 2010 WL 3212085, at *4 (M.D. Fla. Aug. 12, 2010) ("A diagnosis alone is an insufficient basis for finding that an impairment is severe."). Overall, there is substantial evidence supporting the ALJ's conclusion that the Plaintiff did not suffer from a severe mental impairment. The Plaintiff fails to direct the Court to objective medical evidence that would compel a contrary determination. Thus, the Court finds that the Plaintiff's first argument is without merit.

### B.   The ALJ's Evaluation of the Opinions of Drs. Candelore and Hernandez

Next, the Plaintiff argues that the ALJ improperly discounted the opinions of Drs. Candelore and Hernandez. Social Security Regulations "establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion." *Belge v. Astrue*, No. 3:09-cv-529-J-JRK, 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010). Under this hierarchy, "the opinions of examining physicians are generally given more weight than nonexamining physicians; treating physicians receive more weight that nontreating physicians; and specialists on issues within their areas of expertise receive more weight than nonspecialists." *Id*. (internal citations and quotations omitted). When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless "good cause" is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (noting that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d). Such a preference is given to treating sources because they are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th

Cir. 1997). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). "Good cause" for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

As discussed earlier by the Court, the ALJ properly rejected Dr. Candelore's January 11, 2010 questionnaire and Dr. Hernandez's April 21, 2011 questionnaire. Dr. Candelore's findings that the Plaintiff was "totally unstable" and "cannot work due to mental illness" were inconsistent with both her own treatment records as well as the examining notes of Drs. Bernard and Rabinowitz. R. 232-33. In addition, Dr. Candelore acknowledged that her conclusions were not based on objective diagnostic testing and/or laboratory findings. R. 228. Further, the ALJ was under no duty to accept Dr. Candelore's finding that the Plaintiff was unable to work since findings such as these are not medical opinions and are reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1)-(3) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled. … We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraph[] (d)(1)…."). With regard to Dr. Hernandez's April 21, 2011 questionnaire, there is no indication in the record that the Plaintiff ever presented to Dr. Hernandez for examination, and the Plaintiff puts forth no objective evidence to support his assertion that he was treated by Dr. Hernandez. In addition, the extreme mental limitations described by Dr. Hernandez are inconsistent with objective medical record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4)

("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Thus, since the ALJ had good cause for discounting the opinions of Drs. Candelore and Hernandez, the Court finds that the Plaintiff's second argument is without merit.

### C. The ALJ's Step Four Analysis

Next, the Plaintiff argues that, at step four of the sequential analysis, the ALJ should have consulted a VE to better determine the Plaintiff's ability to perform the physical and mental demands of his prior work. At step four of the sequential evaluation, the claimant bears the burden of demonstrating that he cannot return to his past relevant work. *See Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990) ("The claimant also bears the initial burden of proving that he is unable to perform her previous work."). If a claimant's impairments do not prevent him from performing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). While a VE's testimony is often helpful at step five, after the burden has shifted to the Commissioner to prove that there are jobs that exist in significant numbers in the national economy that a claimant can perform, there is no requirement that an ALJ use a VE to determine whether a claimant can perform his past relevant work at step four. *Hennes v. Commissioner of Social Security*, 130 F. App'x 343, 345-46 (11th Cir. 2005) (quoting 20 C.F.R. § 404.1560(b)(2)); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n. 2 (11th Cir. 1990) (finding that "because the ALJ concluded that [the claimant] is capable of performing her past relevant work, testimony from a vocational expert was not necessary").

The Plaintiff contends that the ALJ should have consulted a VE to provide testimony as to how his mental impairments eroded the number of potential jobs that the Plaintiff could perform. However, the ALJ was not required to elicit testimony from a VE as to the occupational impact of

mental impairments that were not supported by the medical record. *See Beegle v. Social Security Administration, Commissioner*, 482 F. App'x 483, 487 (11th Cir. 2012) ("An ALJ is not required to include findings in a hypothetical question that the ALJ properly rejected as unsupported.") (citations omitted). Further, the ALJ was not required to use a VE at step four to determine whether the Plaintiff can perform his past relevant work. *See Hennes v. Commissioner of Social Security*, 130 F. App'x 343, 345-46 (11th Cir. 2005) (quoting 20 C.F.R. § 404.1560(b)(2)); *see also Lucas v. Sullivan*, 918 F.2d 1567, 1573 n. 2 (11th Cir. 1990) (finding that "because the ALJ concluded that [the claimant] is capable of performing her past relevant work, testimony from a vocational expert was not necessary"). The Plaintiff also argues that the ALJ's step four analysis was flawed because of "his inaccurate assessment of the Plaintiff's past relevant work." (Dkt. No. 12 at 17.) Specifically, the Plaintiff asserts that "there is no job title of 'Engineering Trouble-Shooter' in the Dictionary of Occupational Titles." (Dkt. No. 12 at 17.) However, the ALJ did not rely on the Dictionary of Occupational Titles at step four. R. 52-53. Instead, the ALJ found that the Plaintiff was able to perform his prior job as an Engineering Trouble-Shooter "as actually performed." R. 52. In support for this finding, the ALJ referenced the Plaintiff's work history report at Exhibit 3E, which described the work demands of the Plaintiff's prior job. R. 52, 116-17. By the Plaintiff's own description, the job of Engineering Trouble-Shooter was performed at the medium exertional level. *See* R. 117; 20 C.F.R. § 404.1567(c) (defining medium work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."). In the alternative, the ALJ looked to the Grids, which, in the absence of non-exertional impairments, also directed a finding of "not disabled." R. 52-53. Since the Court has already found that the ALJ's analysis of the Plaintiff's alleged mental impairments was based on substantial evidence, the Court finds that the ALJ's use of the Grids was also proper. *Foote v.*

*Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) ("Exclusive reliance on the grids is appropriate in cases involving only exertional impairments...."). Thus, the Plaintiff's third argument is without merit.

### D. The Appeals Council's Denial of Review and the ALJ's RFC Assessment

Next, the Plaintiff contends that the ALJ's RFC assessment was not based on substantial evidence on record. Specifically, the Plaintiff argues that the Appeals Council should have remanded the case for consideration of additional imaging studies, which demonstrated that the Plaintiff was unable to perform medium work. The Social Security regulations state:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge['s] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge['s] hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). When a claimant properly presents new evidence to the Appeals Council and it denies review, "a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262 (11th Cir. 2007). The new evidence is material, and thus warrants remand, if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

After the ALJ's Decision was issued, the Plaintiff submitted to the Appeals Council additional medical records for its consideration. R. 8. One of these records was a July 26, 2011 MRI of the Plaintiff's lumbar spine, in which radiologist Reny Kindelan, M.D., found that the Plaintiff had some disc bulging, extensive hypertrophic spondylosis, hypertrophic facet joint disease, hypertrophy of ligamentum flavum, and degenerative disc disease at every lumbosacral

segment. R. 278. However, Dr. Kindelan found no evidence of disc herniation or spinal canal stenosis. R. 278. Ultimately, the Appeals Council denied the Plaintiff's request for review since there was no "basis for changing the [ALJ's] decision." R. 5-6. After reviewing the newly submitted evidence, the Court finds that the Appeals Council's decision was based on substantial evidence.

With regards to the MRI of the Plaintiff's spine, while there are a number of diagnoses included in the radiologist's report, there is no explanation in this study, or any other medical record, which describes how these diagnoses impact the Plaintiff's ability to work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). As stated earlier by the Court, subsequent records from Dr. Candelore revealed relatively normal findings upon examination. R. 285-93. The Plaintiff also asserts that the "Appeals Council merely listed the medical evidence that was submitted after the ALJ's Decision, but made no further mention of it or attempt to evaluate it." (Dkt. No. 12 at 21.) However, the Eleventh Circuit has consistently held that the Appeals Council is not required to explain its denial of a claimant's request for review. *See Burgin v. Commissioner*, 420 F. App'x 901, 903 (11th Cir. 2011) ("[B]ecause a reviewing court must evaluate the claimant's evidence anew, the AC is not required to provide a thorough explanation when denying review."); *Mansfield v. Astrue*, 395 F. App'x 528, 530 (11th Cir. 2010); *Robinson v. Astrue*, 365 F. App'x 993, 997 (11th Cir. 2010); *Barclay v. Commissioner*, 274 F. App'x 738, 743 (11th Cir. 2008).

Overall, the medical record supports the ALJ's RFC assessment that the Plaintiff could perform medium work. Since the newly submitted evidence does not create a reasonable possibility that the administrative outcome would change, the Court finds that the Appeals Council properly denied the Plaintiff's request for review. *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Thus, the Plaintiff's fourth argument is without merit.

## V.  Conclusion

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

1. The Commissioner's final decision in this case be **AFFIRMED**.

2. The Clerk enter judgment accordingly and **CLOSE** the file.

**Respectfully recommended** in Chambers in Fort Myers, Florida on February 11, 2014.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).

Copies furnished to:

Counsel of Record